**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company;** | ) ) ) | Case No. 26cv03622 |
| Plaintiff, | ) ) ) | **JURY DEMAND** |
| v. | ) ) | |
| **NATIONWIDE AUTOPROTECT, LLC, a New Jersey limited liability company, and ENSURETY VENTURES, LLC, a Missouri limited liability company,** | ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Endurance Warranty Services, L.L.C. ("Endurance" or "Plaintiff"), for its Complaint for Injunctive and Other Relief against Defendants Nationwide AutoProtect, LLC ("Nationwide") and Ensurety Ventures, LLC, doing business as Omega Auto Care ("Omega") (collectively, Nationwide and Omega are referred to as the "Defendants"), states as follows:

**NATURE OF THE ACTION**

1. This is an action for injunctive relief and damages arising out of Defendants' trademark infringement, false advertising and unfair competition. Endurance brings its claims under the Lanham Act and state common law. Relevant to this lawsuit, rather than fairly compete, Defendants have engaged in a multi-jurisdictional, multi-party scheme where they are targeting and contacting Endurance's customers, by using deceptive websites through which they hold themselves out to be "Endurance Customer Service," and when Endurance customers call employing false and deceptive practices to steal customers from Endurance and induce Endurance's customers to purchase Defendants' competing vehicle service contract products. Endurance now seeks temporary, preliminary, and permanent injunctive relief to stop

57356396.1

Defendants' Lanham Act violations, as well as seeking monetary damages and other relief through this lawsuit.

2.      Endurance was founded in 2006, and is one of the nation's premier direct-to-consumer provider of vehicle service contracts. Vehicle service contracts (sometimes referred to colloquially as extended auto warranties) supply consumers with peace-of-mind after a vehicle manufacturer's original warranty expires, and provides coverage for the cost of future repairs to consumers.

3.      Specifically, vehicle service contracts help consumers avoid potential out-of-pocket repairs not otherwise covered by typical automobile insurance. Vehicle service contracts are aftermarket contracts offered by companies to cover future repair costs for when a vehicle manufacturer's original warranty expires.

4.      Through its service model, Endurance provides comprehensive and customer-centric auto protection. Endurance is one of the largest providers of vehicle protection coverage in the nation and is backed by A-rated insurance companies. Endurance enjoys an excellent reputation and the esteem of the consumers it serves, and of the industry, generally. Endurance is also fairly unique from other service providers in the vehicle service contract industry in that it does not outsource administration of claims to third parties, though it does sell some vehicle service contracts for other third-party administrators.

5.      Endurance has worked hard through the years to develop its reputation under the Endurance brand and works harder to attract and maintain its clients. Endurance utilizes state-of-the-art, customized Customer Relationship Management software to identify and store customer leads and spends millions per year to market its products across a host of different platforms. Through these leads, Endurance prepares customized quotes for each potential customer, based

2

57356396.1

on individualized information unique to the customer, such as the make and model of the car, year of manufacture, odometer readings, and other items.

6. Endurance is the owner of several trademark registrations, including U.S. Trademark Registration No. 4,781,129 for the mark "Endurance" for the services "providing extended warranties on motor vehicles." See Exhibit A (Registration Certificate).

7. Endurance has received numerous calls that Nationwide and Omega are contacting Endurance's customers and levying false accusations against Endurance in an effort to move, often successfully, those customers from Endurance to Defendants.

8. Defendants have developed and launched at least one website where they impersonate Endurance, identifying itself as the Endurance customer service line.

9. When Endurance customers search for Endurance through an online search engine, they land on Defendants' website, which includes the copy "Endurance customer service," and mistakenly call Defendants, when they had intended to reach Endurance. According to the customers and adding to their confusion, Defendants' website appears at or near the top of the search results.

10. On information and belief, Defendants are paying for keyword searches with Endurance's Endurance trademark, so that their website is populated at or near the top of the search results, further evidencing their intent to confuse consumers. By purchasing Endurance keywords through search engines, such as Google and Bing, Defendants are causing consumers searching for Endurance's customer service number to receive a search result list including Defendants' website.

11. Defendants are also contacting existing Endurance customers directly.

12. Once Defendants have deceived an Endurance customer into contacting

3

57356396.1

Defendants or initiated contact with an Endurance customer, in the course of these calls, Defendants or their agents make specific, demonstrably false statements or highly misleading statements about Endurance, with the intent of inducing consumers to terminate their Endurance vehicle service contracts and purchase Defendants' competing vehicle service contract.

13. Among these statements, Defendants or its sales representatives are telling Endurance customers *falsely* that: (a) the government has "red flagged" Endurance; (b) all of Endurance's contracts have been put on hold because of the government's "red flag;" (c) Defendants are Endurance's "sister company" and customers are supposed to stop doing business with Endurance and start doing business with Defendants; (d) Endurance is fraudulent; (e) Endurance is going out of business; (f) Endurance is not paying claims and, because of "the lawsuit," customers are entitled to a refund; (g) Endurance is being sued or investigated by a federal agency; and/or (h) Endurance's policies are no longer in effect.

14. Endurance possesses recorded conversations in which its customers relay the false and misleading statements that Defendants' sales representatives are making to Endurance's customers.

15. Defendants' conduct has led to the actual loss of business for Endurance.

16. By making these false and misleading statements after driving customers to its website through use of Endurance's Endurance trademark, Defendants have unlawfully diverted consumers from Endurance to Defendants, damaged Endurance's goodwill and credibility in the marketplace, and unlawfully distort competition in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

17. Before Endurance's customer relationships and goodwill are further eroded, Endurance seeks temporary, preliminary, and permanent injunctive relief to protect the intrinsic

4

57356396.1

value of its customer relationships and goodwill, at a minimum.

18. Endurance also seeks all of the damages it has suffered as a result of Defendants' ongoing actions.

19. Endurance further seeks enhancement of damages and its reasonable attorneys' fees because of Defendants' willful and malicious acts.

## PARTIES

20. Plaintiff Endurance Warranty Services, L.L.C. is an Illinois limited liability company, with its principal place of business in Northbrook, Illinois.

21. Defendant Nationwide AutoProtect, LLC is a New Jersey limited liability company, with its principal place of business in Mt. Laurel, New Jersey.

22. Defendant Ensurety Ventures, LLC, doing business as Omega Auto Care, is a Missouri limited liability company, with its principal place of business in Jacksonville, Florida.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Endurance's Lanham Act claim raise federal questions. This Court has supplemental jurisdiction over the remaining claims, pursuant to 28 U.S.C. § 1367(a).

24. This Court has personal jurisdiction over Nationwide and Omega, and venue is proper in this District under 28 U.S.C. § 1391(a), because Defendants committed and continue to commit tortious acts in and related to this State, as well as having performed acts that constitute doing business within the state of Illinois.

25. As set forth herein, Defendants have intentionally directed tortious conduct against Endurance, which they know to be located in Illinois.

26. In particular, Defendants have created a website or websites, to which Defendants

5

drive traffic through use of Endurance's Endurance trademarks, and through which Defendants attempt to confuse Endurance customers into directing their calls, not to Endurance, but to Defendants.

27.     Once these customers reach Defendants, Defendants then engage in false advertising, making literally false and/or materially misleading statements about Endurance and its products, all in an attempt to divert business from Endurance, an Illinois-based company, to Defendants.

28.     Under the Illinois Long-Arm Statute and United States Supreme Court, Seventh Circuit, and Northern District of Illinois case law, this conduct by Defendants gives this Court specific personal jurisdiction over each Defendant.

29.     Venue also is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

30.     Specifically, Defendants sell vehicle protection plans nationwide, including to consumers in Illinois and within this judicial district. Additionally, Endurance's principal place of business is in Northbrook, Illinois, and it regularly conducts business in Illinois.

## EVENTS GIVING RISE TO THIS ACTION

### ENDURANCE'S BUSINESS

31.     Since its founding in 2006, Endurance has worked hard to become the nation's premier direct-to-consumer provider of vehicle service contracts. Endurance provides the most comprehensive and customer-centric auto protection, and is one of the largest providers of vehicle protection coverage in the United States.

32.     In connection with the sale and marketing of its products, Endurance owns and

6

utilizes a series of federally-registered trademarks. Through these marks, along with its ongoing national advertising, marketing and promotional efforts, Endurance has generated substantial goodwill and consumer recognition.

33.     By virtue of Endurance's extensive, continuous, and exclusive promotion and use of the Endurance marks to advertise, promote, distribute, and sell vehicle service contracts, consumers across the United States recognize the Endurance marks and the Endurance brand as belonging to Endurance; associate the services offered and sold under the Endurance marks exclusively with Endurance; and recognize and trust Endurance as the source of the vehicle service contracts offered for sale and sold under the Endurance trademarks.

34.     Endurance has earned valuable goodwill from being recognized, associated with, and identified by consumers and the trade, in part because of its federally-registered trademarks.

35.     Endurance sells and markets its plans throughout the United States, with the exception of California (in which it uses a third-party administrator to sell a different product than a vehicle service contract). Throughout its extensive and ongoing national advertising, marketing, and promotional efforts, Endurance has generated and continues to maintain substantial goodwill and customer recognition.

36.     Because of its customer service, Endurance is a Better Business Bureau "Accredited Business."

37.     Being an "Accredited Business" means that Endurance has demonstrated to the BBB that it has a commitment to ethical business standards, including building trust, advertising honestly, telling the truth, being transparent, honoring promises, being responsive, safeguarding privacy, and embodying integrity.

38.     Endurance has further demonstrated to the BBB that it is a reputable company,

7

licensed, bonded, and insured; resolves complaints in a timely manner; follows through on its promises; and is committed to safe online transactions.

39. Endurance's recognition extends beyond the BBB, including but not limited to, winning three separate awards from Consumer Affairs' Buyers Choice Awards in 2025 for Best Customer Service, Best Value for Price, and Best Coverage Options, Newsweek's America's Best Online Platforms 2025, and receiving 21 separate Stevie Awards since 2014, including three in 2025 for Contact Center of the Year, National Sales Team of the Year, and Fastest Growing Company of the Year.

40. Endurance offers a series of different products, ranging from comprehensive coverage to more affordable plans that cover core components. Endurance's vehicle service contracts cover newer, low-mileage vehicles, as well as older, high-mileage cars.

41. Because of its customer service model and the coverage it provides, Endurance enjoys an excellent reputation in the industry and with the consumers it serves.

42. As part of its business model, when Endurance acts as the seller, it sells an Endurance contract the vast majority of the time, and unlike other service providers, Endurance is the direct administrator of its own vehicle protection plans. For these contracts, Endurance handles everything with the consumer directly, from quote to claim, meaning no middleman. As a small part of its business, Endurance will sell contracts on behalf of other third-party administrators, which administer those plans. This paragraph does not speak to those third-party administrator plans, but only the Endurance plans that Endurance sells and administers.

43. Because Endurance sells the vehicle service contract and administers the claims, Endurance is able to more quickly and effectively administer claims brought by its consumers of Endurance plans.

57356396.1

44. As part of its business model and plan value for the plans it sells and administers, Endurance pays the mechanic directly for auto repairs, including for all parts and labor.

45. Adding more value to customers, Endurance's protection plans are accepted by licensed repair facilities nationwide. For approved claims, Endurance also provides rental coverage with no deductible for up to five days, and provides towing at no cost for a certain preset amount of mileage.

46. Endurance also offers a number of other benefits through its plans, making it one of the most attractive options for individuals in the market for a vehicle service plan and leading to it earning a host of awards.

47. To generate sales of vehicle service contracts to its customers, Endurance's customer leads are pre-generated. Endurance refers to its leads as "engaged leads," and these leads are stored in Endurance's CRM (Customer Relationship Management) software, and provided to its sales representatives to call.

48. The other means by which Endurance obtains leads is by individuals calling Endurance in response to Endurance's marketing materials. All leads contacted by a sales representative are pre-generated. Sales representatives do not engage in cold calling. Leads are not developed by sales people, but rather through prospective customers either calling Endurance directly or filling out a webform expressing interest.

49. Endurance's customers seek out Endurance for vehicle service contracts, not the other way around.

50. Endurance almost exclusively sells vehicle service contracts lasting four-years or longer, with the full cost of the contract spread out over a set period of time, but paid on a monthly basis until the cost of the vehicle service contract is paid.

51. Endurance's pricing is generated on a car-by-car basis, based on things such as the make and model of the car, year of manufacture, odometer readings, and other items. With these specific inputs, Endurance's proprietary software generates a price proposal.

52. Because Endurance's customers seek out Endurance, not the other way around, there is no centralized location through which Endurance's customer list can be acquired by legitimate means externally.

53. Endurance's customer list is among its most valuable confidential information, and constitutes a trade secret.

54. Endurance's trade secret customer list is not known in the industry or by the general public and gives Endurance a competitive advantage to win and retain business with its customer base. The value of such information remaining confidential and a trade secret is immeasurable, and is a driving factor in Endurance's several hundred million dollar per year business.

55. Unauthorized use of Endurance's trade secret customer list negatively and significantly impacts Endurance's ability to retain business. While Endurance does not have direct evidence of Defendants having misappropriated Endurance's trade secret customer list, Endurance is highly concerned about the means by which Defendants appear to be targeting Endurance's customers.

56. Phrased differently, it is impossible that Defendants happen to be contacting Endurance's customers "randomly" and at will by merely opening the "phone book" and dialing the entire U.S. population.

57. Rather, it is far more probable that Defendants have acquired a list of Endurance's customers and are contacting them and lying to them about Endurance's viability as a seller and

administrator of vehicle service contracts for the sole aim of diverting them to Defendants' competing business.

**DEFENDANTS KNOWINGLY MAKES FALSE STATEMENTS ABOUT ENDURANCE TO STEAL CUSTOMERS FROM ENDURANCE**

58. Similar to Endurance, Defendants are engaged in the business of selling vehicle service contracts.

59. Nationwide sells contracts that Endurance believes, relevant to this lawsuit, are written for Omega.

60. In several instances, Endurance is aware that Nationwide sales representatives are referring to the company selling the vehicle service contract as "Nationwide Omega."

61. Omega also apparently sells at least some of its contracts directly as well, as evidenced by the Endurance customers who have contacted Endurance informing it of Omega's direct attempts to engage in false advertising.

62. Defendants solicit business from consumers throughout the United States. As for Nationwide, when it convinces a consumer to purchase a vehicle service contract, relevant to this lawsuit and based on Endurance's information and belief, Omega then writes the contracts for Nationwide, which includes contracts across the United States, including in Illinois.

63. On information and belief, the business relationship between Nationwide and Omega is governed by a written agreement, which requires Nationwide to comply with all laws and grants Omega authority to review, approve, and control Nationwide's conduct. This is a standard practice in the industry when a third-party administers a contract sold by a company.

64. In November 2025, Endurance, through its counsel, sent a cease and desist letter to Nationwide regarding the false statements that its sales representatives were making to Endurance's customers about Endurance and its business viability.

11

57356396.1

65.     On information and belief, based on its contractual relationship with Omega, Nationwide was not only supposed to cease such activity, but also to alert Omega to Nationwide's receipt of the letter.

66.     On further information and belief, Omega has made no attempts to stop Nationwide's conduct and continues to financially benefit from Nationwide's conduct.

67.     Endurance has received a number of calls, where Endurance customers identify Omega as making these same false statements as Nationwide.

68.     Starting no later than July 2025, Endurance began receiving a series of cancellation calls and other calls from its customers.

69.     The common theme from each of these calls was that a third-party, identifying itself as Nationwide Auto Protect, Omega, and/or Nationwide Omega, was either contacting Endurance's customers directly or that their calls were "intercepted" when they found the number for "Endurance customer service" and reached Defendants instead of Endurance.

70.     Once on the phone with Endurance's customers, they reported to Endurance that Defendants spread a series of lies, including that the government has "red flagged" Endurance; they were Endurance's sister company and were taking over Endurance's contracts; Endurance's policies were no longer in effect; Endurance was not paying its claims; and Endurance sends expiring contracts to Defendants.

71.     Defendants are specifically targeting Endurance's customers, either calling them without those customers requesting a call or maintaining websites that are falsely holding themselves out to be "Endurance customer service," when they have no affiliation with Endurance, whatsoever.

72.     Endurance's customers initiate the transaction with Endurance by either providing

12

57356396.1

their contact information on an Endurance website, on a contracted marketing service provider's website, or by reaching out directly.

73. The fact that these customers are specifically targeted and told false information about Endurance, appears to be part of a deliberate scheme by Defendants to confuse and defraud these customers for the purpose of selling competing products to those customers.

74. Endurance has not and would not authorize a third party, including Defendants, to attempt to move Endurance's customers to an unrelated third party, like Defendants, either directly or through a misleading website.

75. This conduct by Defendants is unauthorized, is wrongful, and violates the Lanham Act and other common laws.

76. Endurance's customers have relayed the following lies and misleading statements made by Defendants' sales representatives:

a. The government has "red flagged" Endurance;

b. All of Endurance's contracts have been put on hold because of the government's "red flag";

c. Defendants are Endurance's "sister company" and customers are supposed to stop doing business with Endurance and start doing business with Defendants;

d. Endurance is going out of business;

e. Endurance is fraudulent;

f. Endurance is not paying claims and, because of "the lawsuit" [which is unspecified or nonexistent], customers are entitled to a refund;

g. Endurance is being sued or investigated by a federal agency; and/or

h. Endurance's policies are no longer in effect.

13

77. None of these statements are true.

78. In receiving these calls and when the Endurance customer received a call directly from Defendants, they indicated that Defendants' representatives possessed all of their information, including name, VIN, and miles on the car, leading the customers to believe that Defendants' statements about Endurance were truthful.

79. In these calls, Defendants' representatives told the customer to cancel the payment with Endurance, pay a down payment on the Defendants' vehicle service contract, and call or write to Endurance to cancel their plan.

80. As a result of Defendants' false or misleading statements of material fact to Endurance's customers, Endurance has lost a number of customers of which it knows about and potentially countless others that did not provide this detail in cancelling their vehicle service contracts.

81. On or about November 21, 2025, outside counsel for Endurance sent a cease and desist letter to Nationwide by overnight and certified mail.

82. Endurance demanded that Nationwide cease its improper and unfair competition by spreading lies about Endurance. A true and correct copy of the letter is attached as Exhibit B.

83. Nationwide never responded to Endurance's November 21, 2025 letter, and the calls that Endurance receives from customers questioning Endurance based on the false claims made by Nationwide and Omega persist to this day.

**EFFECT OF DEFENDANTS' CONDUCT**

84. With Defendants using literally false and materially misleading statements about Endurance and its continuing viability as a seller and administrator of vehicle service contracts, Endurance stands to lose substantial business as well as losing the value of its goodwill and

57356396.1

customer relationships, which cannot be adequately addressed at law. Defendants' conduct violates the Lanham Act.

85.     Defendants have engaged in false advertising in violation of the Illinois Deceptive Trade Practices Act.

86.     Defendants' actions are deliberate, willful, and calculated to mislead consumers and to unfairly compete with Endurance.

87.     Defendants have acted with knowledge of the falsity of their statements.

88.     Defendants' concerted conduct and scheme have caused and continues to cause substantial harm to Endurance, its sales, its goodwill, and its business reputation.

89.     All told, Defendants are causing, threatening, and/or will continue to cause or threaten significant irreparable harm to Endurance, including the loss of long-standing customer relationships, loss of goodwill, loss of value of Endurance's trademarks, as well as damage to Endurance's reputation as an industry leader and its ability to successfully market its goods and services. Money alone cannot make Endurance whole.

<u>COUNT I</u>
**VIOLATION OF LANHAM ACT, SECTION 43(A), 15 U.S.C. §1125(A) – FALSE OR MISLEADING DESCRIPTION OF FACT AS TO ENDURANCE**
**(ALL DEFENDANTS)**

90.     Endurance hereby repeats, realleges, and incorporates by reference the allegations that are contained in Paragraphs 1 through 89.

91.     Defendants' conduct, as described herein, constitutes false and misleading representations of fact in commercial advertising or promotion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

92.     Defendants have intentionally made false and misleading statements to consumers including that: (a) the government has "red flagged" Endurance; (b) all of Endurance's contracts

15

have been put on hold because of the government's "red flag;" (c) Defendants are Endurance's "sister company" and customers are supposed to stop doing business with Endurance and start doing business with Defendants; (d) Endurance is fraudulent; (e) Endurance is going out of business; (f) Endurance is not paying claims and, because of "the lawsuit," customers are entitled to a refund; (g) Endurance is being sued or investigated by a federal agency; and/or (h) Endurance's policies are no longer in effect.

93. Each of these statements is literally false, material, and likely to deceive consumers and influence purchasing decisions by diverting customers from Endurance to Defendants for the purchase of a vehicle service contract.

94. Defendants' false and misleading statements have caused and continue to cause injury to Endurance, including loss of sales, diverted business, damage to goodwill, and harm to its business reputation and the value of its marks.

95. Endurance is entitled to recover its actual damages and Defendants' profits, as well as temporary, preliminary, and permanent injunctive relief, enhanced damages, punitive damages, costs, and attorneys' fees.

### COUNT II
**VIOLATION OF LANHAM ACT SECTION 43(A), 15 U.S.C. § 1125(A)**
**VICARIOUS LIABILITY, AGENCY, APPARENT AUTHORITY, CONTRIBUTORY INFRINGEMENT**
**(AGAINST OMEGA)**

96. Endurance hereby repeats, realleges, and incorporates by reference the allegations that are contained in Paragraphs 1 through 95.

97. On information and belief, Omega entered into a written agreement with Nationwide for Nationwide to act as Omega's seller for marketing and promoting Omega's vehicle service contracts to consumers.

98. On further information and belief, pursuant to that contract, Omega requires in

16

57356396.1

writing that Nationwide comply with all laws.

99.     On further information and belief, per that contract, Omega has the right to edit, approve, and/or control Nationwide's advertising, but has not done so, or has willfully declined to control Nationwide's sales and advertising activities.

100.    Pursuant to their written agreement, Nationwide is the exclusive sales agent for Omega.

101.    In its capacity as exclusive sales agent for Omega, Nationwide made unsolicited calls to Endurance's customers, and knowingly and intentionally, and with Omega's express knowledge and actual or implicit authority, intentionally misled and lied to consumers during those calls.

102.    Omega knew or should have known of Nationwide's sales tactics and has constructive knowledge of Nationwide's sales tactics through publicly available materials, including, but not limited to, BBB complaints, but has made no efforts to curtail them.

103.    Omega has not taken appropriate steps to prevent Nationwide, as its sales agent, from intentionally misleading Endurance's customers about Endurance, its products, and Endurance's ongoing viability as a company. Omega has failed to such action despite Nationwide having a contractual obligation to comply with the law, including, by extension, the Lanham Act.

104.    By failing to take appropriate measures to prevent its agent Nationwide from intentionally misleading consumers about Endurance and Endurance's products, Omega has ratified and affirmed the unlawful sales tactics of its sales agent, Nationwide.

105.    Omega has directly benefited from Nationwide's sales tactics by obtaining sales it would not otherwise have made but for Nationwide's false and misleading statements to

17

Endurance's customers.

106. Despite Endurance sending Nationwide a cease and desist letter in November 2025 to demand that this conduct stop, Nationwide has not stopped its conduct and Omega continues to accept the vehicle service contracts that derive from Nationwide's false promotion of Omega's products, including those that arose from Nationwide's false and misleading statements about Endurance.

107. On information and belief, when Nationwide completes a sale to a customer, Omega causes its contract with the customer to be sent to that consumer, which notes that it is an Omega contract, and directs the consumer to communicate with Omega on a going-forward basis.

108. Accordingly, Omega also provides apparent authority for Nationwide's conduct in that a reasonable consumer would believe that Omega consents to Nationwide's sales tactics as if done at Omega's direction and with Omega's knowledge.

109. Omega materially contributed to or induced the false advertising by providing the vehicle service contract for Nationwide to sell, knowing of Nationwide's false and misleading statements and failing to take steps to stop them.

110. Omega has also materially contributed to or induced the false advertising by continuing to benefit from Nationwide's false and misleading statements to Endurance customers for the purpose of poaching those customers from Endurance to Omega.

111. As a direct and proximate result of Omega using Nationwide as its selling agent, Nationwide utilizing false and misleading statements about Endurance to Endurance's customers, and continuing to maintain the contracts that derive from Nationwide's false and misleading statements about Endurance when promoting Omega's products, Omega is

18

57356396.1

vicariously liable for Nationwide under the theory of agency, apparent authority, and contributory infringement. Endurance is entitled to damages from Omega in an amount to be determined at trial.

112. Because Omega has shown a continuing and ongoing pattern of failing to monitor its sales agents, Endurance should be awarded temporary, preliminary, and permanent injunctive relief prohibiting any party on Omega's behalf from engaging in similar sales tactics against Endurance for the purpose of selling Omega products. Endurance also is entitled to recover its actual damages and Omega's profits, enhanced damages, punitive damages, costs, and attorneys' fees.

## COUNT III
### VIOLATION OF LANHAM ACT, SECTION 32, 15 U.S.C. § 1114 – INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS
### (AGAINST ALL DEFENDANTS)

113. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 89.

114. Defendants' use and continued use of the Endurance trademark in commerce in connection with the offering for sale of vehicle service contract products is likely to cause, and has in fact caused, confusion, mistake, or deception.

115. Defendants are operating, maintaining, paying for, bidding on keywords for, or are otherwise affiliated with Websites, holding themselves out to be "Endurance customer service."

116. Defendants are using these websites in commerce in connection with the offering for sale of vehicle service contracts in a way that is likely to cause and has, in fact, caused, confusion, mistake, and deception as to the true owner and user of Plaintiff's "Endurance" mark and as to the true seller and administrator of the vehicle service contract service provided by

19

Plaintiff Endurance.

117.    On information and belief, Defendants are purchasing "Endurance" and derivations of that mark as keyword search terms for the purpose of promoting these deceptive "Endurance customer service" websites.

118.    Defendants are purchasing the Endurance keywords in order to drive Endurance customers to contact Defendants, instead of Endurance, as the customers intend.

119.    Defendants are holding themselves out as the owner, operator, and/or affiliate of Endurance Warranty Services, L.L.C.

120.    In holding themselves out as "Endurance," Defendants are causing consumers to believe Defendants are affiliated, associated with, or are Endurance.

121.    In holding themselves out as "Endurance," Defendants are feeding off of Endurance's existing customers and contractual relationships.

122.    In holding themselves out as "Endurance," Defendants are interfering with Endurance's contractual relationships.

123.    Defendants do not have permission to use the Endurance mark.

124.    Defendants' use of the Endurance mark is intentional and willful.

125.    Specifically, Defendants have knowingly, willfully, and intentionally used Endurance's mark on internet search engines, including Google and Bing!, to advertise their vehicle service contracts through misleading websites holding themselves out to be "Endurance customer service," trading on the substantial goodwill and recognition of Endurance's mark by consumers in conjunction with vehicle service contracts.

126.    Defendants' knowing and intentional use of the Endurance mark in keyword advertising and website ads does, and was intended to cause confusion, to cause mistake, and to

20

deceive consumers about the source of its competing vehicle service contracts.

127. Such conduct is and has led consumers to fall victim to confusion, believing that the Defendants' advertisements are associated with, affiliated with, provided by, and/or endorsed by Endurance.

128. Indeed, numerous consumers, after calling the number that Defendants' held out as "Endurance Customer Service," believed that Defendants had "intercepted" their calls.

129. Trading on the success of the Endurance mark and Endurance's name recognition, Defendants knowingly, willfully, and intentionally used and are using the Endurance mark in keyword searches and online advertising to exploit Endurance's reputation, as well as the time, effort, and expense Endurance has invested in building its brand, which Defendants exploited to infringe the Endurance mark.

130. As a result of the unlawful conduct of Defendants, Endurance has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendants' actions are enjoined by this Court. Endurance has suffered and will continue to suffer substantial damage to its reputation, goodwill, and sales.

131. Endurance is entitled to, among other relief, injunctive relief and an award of its actual damages (or, in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(c)), Defendants' profits, enhanced damages and profits, costs, and attorney's fees.

## COUNT IV
### DECEPTIVE TRADE PRACTICES – 815 ILCS §§ 510/1, *ET SEQ.*
### (AGAINST ALL DEFENDANTS)

132. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 89.

133. Defendants have knowingly and willfully engaged in deceptive trade practices

57356396.1

within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.*, by disparaging the goods, services, and/or business of Endurance through the use of false or misleading representations of fact.

134. The foregoing acts of Defendants constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.*, for which Endurance is entitled to injunctive relief, attorneys' fees, and costs.

135. The foregoing acts of Defendants will create a likelihood of injury to the public image and business reputation of Endurance in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, for which Endurance is entitled to injunctive relief.

136. The foregoing acts of Defendants were designed intentionally to mislead and deceive the public in violation of 815 ILCS §§ 510/1 *et seq.*, for which Endurance is entitled to injunctive relief.

137. The false and misleading statements made by Defendants are causing and is likely to cause substantial injury to the public and to Endurance.

### COUNT V
**(ILLINOIS COMMON LAW – DEFAMATION PER SE)**
**(AGAINST DEFENDANTS)**

138. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 89.

139. Defendants' statements about Endurance are false.

140. Defendants have published their statements about Endurance's ongoing viability, specifically their claim that Endurance is going out of business, to third-party consumers.

141. Defendants made these statements with actual knowledge or reckless indifference

22

57356396.1

to their truth or falsity.

142. Upon information and belief, Defendants' conduct was and continues to be willful, intentional, and in bad faith.

143. Defendants' acts have caused, and continue to cause, damage to Endurance.

144. Endurance is entitled to recover its damages.

## COUNT V
### (ILLINOIS COMMON LAW – TORTIOUS INTERFERENCE WITH CONTRACT)
### (AGAINST DEFENDANTS)

145. Endurance hereby repeats, realleges, and incorporates by reference the allegations which are contained in Paragraphs 1 through 89.

146. Endurance sells vehicle service contracts to consumers.

147. Defendants have knowledge of the contractual relationships between Endurance and consumers, as Defendants reference these contracts in their sales calls with Endurance customers

148. During those calls, Defendants intentionally instructs customers how to cancel their Endurance contracts after purchasing Defendants' contracts, and in so doing Defendants provide false information about Endurance to induce the customers to terminate their contracts with Endurance.

149. Defendants intentionally induce Endurance customers to terminate their contracts with Endurance. Defendants' interference is improper as they do so through false and misleading statements.

150. Defendants' conduct was willful and malicious and was done with an intent to harm Endurance.

151. As a direct result, Endurance has suffered and will continue to suffer monetary

23

losses in an amount to be proven at trial. In an addition to remedies in equity, Endurance seeks actual, incidental, compensatory, punitive, exemplary, and consequential damages, as well as attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Endurance Warranty Services, L.L.C. seeks judgment in its favor and an Order against Defendants Nationwide AutoProtect LLC and Ensurety Ventures, LLC, for the following relief:

A.  Temporarily, preliminarily and permanently enjoining, without bond, Defendants from utilizing false and deceptive practices including claiming that (a) the government has "red flagged" Endurance; (b) all of Endurance's contracts have been put on hold because of the government's "red flag;" (c) Defendants are Endurance's "sister company" and customers are supposed to stop doing business with Endurance and start doing business with Defendants; (d) Endurance is fraudulent; (e) Endurance is going out of business; (f) Endurance is not paying claims and, because of "the lawsuit," customers are entitled to a refund; (g) Endurance is being sued or investigated by a federal agency; and/or (h) Endurance's policies are no longer in effect;

B.  Temporarily, preliminarily and permanently enjoining, without bond, Defendants from operating, maintaining, paying for, or being affiliated in any way with any website holding itself out to be affiliated with Endurance in any way, including, but not limited to, being "Endurance customer service;"

C.  Awarding Endurance actual, incidental, compensatory, and consequential damages to be proven at trial;

D.  Awarding Endurance exemplary or punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

E.  Awarding Endurance its reasonable attorney's fees and costs; and

F.  Awarding Endurance such further relief as the Court deems necessary and just.

57356396.1

DATED:  APRIL 1, 2026

Respectfully submitted,

**ENDURANCE WARRANTY SERVICES, L.L.C.**


By: */s/ Justin K. Beyer*
        One of Its Attorneys

Justin K. Beyer (justin.beyer@saul.com)
Steven M. Malitz (steven.malitz@saul.com)
Joseph M. Kuo (josph.kuo@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois  60601
Telephone:  (312) 876-7100

*Attorneys for Plaintiff Endurance Warranty Services, L.L.C.*

25

57356396.1