**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company;** | ) ) ) | Case No. 26cv3622 |
| Plaintiff, | ) ) | **JURY DEMAND** |
| v. | ) ) | |
| **NATIONWIDE AUTOPROTECT, LLC, a New Jersey limited liability company, and ENSURETY VENTURES, LLC, a Missouri limited liability company,** | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR
<u>PRELIMINARY INJUNCTION</u>**

Following the completion of expedited discovery and in advance of the preliminary injunction hearing scheduled for May 26, 2026, Endurance submits the foregoing reply in support of its motion for preliminary injunction, and offers the additional facts and law in support of a preliminary injunction against Defendant Nationwide AutoProtect, LLC ("Nationwide").[1] Endurance further submits this reply to address arguments proffered by Nationwide since Endurance filed its motion for temporary restraining order and preliminary injunction.

Put simply, the evidence adduced through expedited discovery shows that Nationwide before, and even after the entry of the temporary restraining order ("TRO") engaged in literally false and materially misleading advertising, in violation of Section 43(a) of the Lanham Act and the Illinois Deceptive Trade Practices Act, and the evidence further demonstrates that it has

---

[1] Endurance has settled in principle with Defendants Ensurety Ventures, LLC and EGV Companies, Inc., and will be dismissing these parties with prejudice upon finalization of the parties' written settlement agreement. As such, it is not pursuing injunctive relief against these Defendants.

57923430.1

committed trademark infringement, in violation of Section 32 of the Lanham Act.

In its two responses, Nationwide has failed to address the vast majority of the arguments presented by Endurance through its motion. Moreover, Nationwide has not identified any witnesses it intends to call at the preliminary injunction hearing, and has only identified two exhibits it intends to utilize. Based on this, Endurance responds to such arguments made by Nationwide, and any arguments Nationwide may otherwise have are deemed waived by failure to raise such issues.[2] Endurance otherwise incorporates the facts and law identified in its original motion (ECF 11 (motion) & ECF 12 (memorandum of law in support of motion)).

As such, the Court should grant Endurance's motion and issue a preliminary injunction against Nationwide.

## I.      Nationwide Engaged in False Advertising

Endurance is likely to succeed on the merits that Defendants have violated Section 43(a) of the Act, which prohibits a defendant from making false or misleading representations of fact in commercial advertisements about another company's goods. *See Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 503 (7th Cir. 2009). More precisely, the Act provides that any person who, "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of … another person's goods, services, or commercial activities, shall be liable in a civil action[.]" 15 U.S.C. § 1125(a)(1)(B).

Here, Endurance satisfies each element to prove its false advertising claims against Defendants, specifically by demonstrating that: (1) Nationwide has made false statements of fact in commercial advertisement about Endurance's products; (2) the statement actually deceived

---

[2] "[F]ailure to develop a legal argument … results in the argument's waiver." *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 413 (N.D. Ill. 2021) (collecting cases) (citations omitted).

57923430.1

Endurance's customers; (3) the deception was material and influenced purchasing decisions; (4) Nationwide caused the false statements to enter interstate commerce; and (5) Endurance has been and is likely to continue to be injured by Nationwide's false statements. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). Through its opposition, Nationwide only challenges whether it has made these statements. (*See* ECF 52.)

The evidence adduced during discovery to date demonstrates all of the elements necessary to prove false advertising, but for purposes of this response and based on Nationwide's arguments presented to the Court, Endurance only focuses on whether Nationwide made the statements. Indeed, the transcripts produced by Endurance and the call recordings produced by Nationwide show that Nationwide's sales representatives are making literally false and materially misleading representations of fact. (*See, e.g.*, PX050 at EWSNWD_000149 & PX040 at EWSNWD_000645 (Nationwide telling customers that Endurance is "red flagged");[3] PX053 at EWSNWD_000355 & PX041 at EWSNWD_000725 (Nationwide telling customers it is Endurance's "sister company"); PX037 at EWSNWD_000433 & PX044 at EWSNWD_000845 (Nationwide telling customers that Endurance is "fraudulent"); PX050 at EWSNWD_000151 & PX039 at EWSNWD_000623 (Nationwide telling customers that Endurance was going out of business); PX038 at EWSNWD_000485-86 & PX031 at EWSNWD_000708-9 (Nationwide telling customers that they are entitled to a refund); PX040 at EWSNWD_000645 & PX031 at EWSNWD_000708 (Nationwide telling customers that Endurance is being investigated by the government/DOJ); PX046 at EWSNWD_000035 & PX049 at EWSNWD_000106 (Nationwide telling customers that Endurance's policies are no longer in effect).) More problematic, Nationwide continued to

---

[3] All documents cited were previously provided to the Court in advance of the preliminary injunction hearing by way of a secure thumb drive and will be presented during the preliminary injunction hearing on May 26, 2026.

make some of these same false statements in calls with customers ***after*** the TRO was entered. Evidence regarding each of these items will be provided to the Court during the preliminary injunction hearing, as Nationwide marked such audio files as attorney's eyes-only, per the Protective Order.

By way of example only, several of the precise statements that customers relayed to Endurance, and attached to Endurance's motion by way of transcripts, were made by Nationwide sales representatives in the audio files that Nationwide produced. *See* NATWD 000026 (PX085), NATWD 000040 (PX087), & NATWD 000066 (PX097) (snippets of relevant sections of such clips will be presented at preliminary injunction hearing); *see also* PX109 (identifying dates of Nationwide calls); *see also* Nationwide 30(b)(6) Dep. at 111-113 (testifying that audio clips were true and accurate and maintained in the ordinary course of Nationwide's business).

Moreover, at the deposition of Nationwide's 30(b)(6) deponent, Nationwide's president and CEO, Michael Kahlbom, testified that Nationwide only maintains audio clips for 90 to 120 days (Nationwide 30(b)(6) Dep. at 103-104), and that it did not produce any audio files to rebut any of the transcripts and audio files that Endurance produced in this case (*id.* at 109-110).

In other words, Endurance's evidence of Nationwide's false statements stand unrebutted before this Court, and will not be rebutted at the preliminary injunction hearing. Nationwide has identified no witness it intends to call at this hearing and has presented no evidence to rebut—and, in fact, produced evidence demonstrating that its sales reps are actually making—the false and misleading statements about which Endurance complains.

Instead, Nationwide points to a statement made by Nationwide's 30(b)(6) deponent, pointing to training materials and purported compliance procedures intended to prevent these alleged statements. (ECF 52 at PageID# 427.) Putting aside that Nationwide's 30(b)(6) expressly

4

and repeatedly stated he was not involved in the sales process and "[doesn't] work in the office" (Nationwide 30(b)(6) Dep. at 62), he also testified that Nationwide sales reps were permitted to say "[a]nything that's on the internet." (*Id.* at p. 59.) He also testified that he was unaware of: (a) whether any sales rep was ever written up for saying something impermissible about Endurance in a call (*id.* at p. 61-62); (b) how frequently Nationwide provided training to its sales reps on audited calls where a rep had potentially said something improper (*id.* at p. 65); or (c) whether anyone was fired for any compliance violation relating to Endurance since June 1, 2025 (*id.* at pp. 67-68), despite only having somewhere between 10-19 sales reps at any time during that timeframe (*id.* at 64). Put simply, the evidence that has been presented by Endurance proves that false and materially misleading statements were made by Nationwide, and the unprepared testimony of a CEO, who claims not to be involved in the sales process does not rebut that.

Endurance has more than demonstrated some likelihood of success on the merits of its false advertising claim against Nationwide, and Nationwide should be preliminarily enjoined from making literally false and materially misleading statements about Endurance.

## II. Nationwide Infringed Endurance's Trademark

Endurance also moved for injunctive relief, seeking to enjoin Nationwide from infringing Endurance's trademark. Endurance explained, through its moving papers and the transcripts of audio recordings of calls it received from customers, which were attached to the Wilner Affidavit, that customers called, indicating they searched for Endurance through a search platform, only to be misdirected to Nationwide. (ECF 12 at PageID# 98-247.)

Nationwide now argues that Endurance's claim fails because Endurance did not produce a website. ECF 52 at PageID# 425-426. Glaringly omitted from Nationwide's Opposition, however, is that Endurance produced a screen print grab of the offending Google Ad banner showing literal

infringement, which shows:



(EWSNWD_001154 (PX058).) That Google banner ad supports Endurance's evidence of what customers were telling it—that they searched for Endurance, that an ad came up identifying "Endurance Customer Service," and that when they called the number they reached Nationwide. Here, the ad identifies Nationwide as "Endurance Car Warranty," in large lettering, falsely identifies it as "Customer Service" and provides a phone number that is not Endurance's. All of this supports Endurance's trademark infringement claim.

Also omitted from Nationwide's opposition is that: (a) Nationwide Protect is a third-party marketer Nationwide has engaged between 2023 through 2026 to obtain customer leads for Nationwide (Nationwide 30(b)(6) Dep. at 30); (b) it made no efforts to ensure that this third party was not infringing its competitors' trademarks (*id.* at 25-26, 35-36, 39-40); or (c) it engages in keyword bidding for the word "Endurance" as part of its marketing campaigns (*id.* at 119-121).

57923430.1

Putting aside Nationwide's claims to this Court about what Endurance did or did not produce in discovery, Endurance has a valid, protectable mark and there is a likelihood of confusion between its mark and the mark used by Nationwide. 15 U.S.C. § 1114; *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). As myriad customers revealed and the screenshot of a Google search shows, Nationwide, through its advertiser, is holding itself out as being "Endurance," leading to consumers contacting Endurance and believing Nationwide "intercepted" their call. (*See, e.g.*, PX046 at EWSNWD_000037; PX050 at EWSNWD_000167; PX034 at EWSNWD_000381; PX035 at EWSNWD_000743; and PX035 at EWSNWD_000745.)

Under well-established law, Nationwide is liable for trademark infringement for this conduct, and this Court should enjoin Nationwide and its marketers from holding themselves out as or to be affiliated with Endurance. Here, Endurance easily satisfies the second element— likelihood of confusion—as no question exists that consumers are confused by Nationwide's Google ads or websites in which they hold themselves out as "Endurance." And while actual confusion is not required, "if available, [evidence of actual confusion] is entitled to substantial weight in the likelihood of confusion analysis." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1016 (N.D. Ill. 2014).

Moreover, this precise conduct has frequently been enjoined and held to constitute actionable trademark infringement. For example, in *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002), the Seventh Circuit upheld an injunction where the defendant embedded the plaintiff's name in its metatag.[4] Describing the conduct in which the defendant

---

[4] The Seventh Circuit explained that "[m]etatags are HTML code intended to describe the contents of the web site. There are different types of metatags, but those of principal concern … are the 'description' and 'keyword' metatags. The description metatags are intended to describe the web

57923430.1

engaged as "initial interest confusion," the Seventh Circuit explained that this was both actionable under the Lanham Act, and occurred "when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Id.*, 300 F.3d at 812. Explaining the issue further, the *Promatek* Court explained, "What is important is not the duration of the confusion, it is the misappropriation of Promatek's goodwill. Equitrac cannot unring the bell." *Id.* at 812-13.

Further, courts in the Seventh Circuit have held on numerous occasions that website advertisements that "mislead[] and/or confuse[] consumers" constitute initial interest confusion. *See, e.g.*, *Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630, 637 (N.D. Ill. 2009); *see also Int'l Profit Assocs. v. Paisola*, 461 F. Supp. 2d 672, 676–77 (N.D. Ill. 2006) (analyzing plaintiff's likelihood of success on the merits after the filing of a motion for preliminary injunction based on defendant's incorporation of plaintiff's trademarks into search terms to lead users to defendant's website, the court held that plaintiff "established through affidavits and attached materials that defendants are using terms trademarked by [plaintiff] as search terms in Google's AdWords program in a manner likely to cause confusion.").

Here, as noted above, Defendant's CEO admitted in Nationwide's 30(b)(6) deposition that Nationwide engages in the exact conduct prohibited under *Paisola*. Moreover, Endurance has presented numerous caller transcripts in which the caller expressed *actual confusion* at the web ads being presented by Nationwide. (*See supra* p. 7.) Under these circumstances, Nationwide should be enjoined from engaging in trademark infringement.

---

site; the keyword metatags, at least in theory, contain keywords relating to the contents of the web site. The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be "hit" in a search for that keyword and the higher on the list of "hits" the web page will appear." 300 F.3d at 810 fn 1 (citation omitted).

57923430.1

**III.     Endurance Does Not Seek a Claim or Injunction for Trade Secret Misappropriation**

Finally, Nationwide argues that Endurance has failed to establish that Nationwide called Endurance customers based on a trade secret customer list. (ECF 52 at PageID# 428-29.) It is unclear the point of this "argument," as Endurance has not brought a trade secret misappropriation claim and does not seek to enjoin Nationwide for trade secret misappropriation. To be clear, Endurance seeks to enjoin Nationwide's false advertising through the Lanham Act and Illinois Deceptive Trade Practices Act, and to enjoin Nationwide's trademark infringement through the Lanham Act. Whether Nationwide is or is not using an Endurance trade secret to identify Endurance customers is irrelevant to Endurance's motion for preliminary injunction, and is not evidence on which Endurance relies to support its motion for false advertising or trademark infringement.

<strong><u>CONCLUSION</u></strong>

Plaintiff Endurance Warranty Services, L.L.C. respectfully requests that this Court grant its motion and enter an order providing it with preliminary injunctive relief.

**DATED: MAY 22, 2026**                    Respectfully submitted,

**ENDURANCE WARRANTY SERVICES, L.L.C.**

By: */s/ Justin K. Beyer*
     One of Its Attorneys

Justin K. Beyer (justin.beyer@saul.com)
Steven M. Malitz (steven.malitz@saul.com)
Joseph M. Kuo (joseph.kuo@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois  60601
Telephone:  (312) 876-7100

*Attorneys for Plaintiff Endurance Warranty Services, L.L.C.*

9

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the foregoing to be served on all counsel of record by way of the ECF Filing System this, the 22nd day of May, 2026.

*/s/ Justin K. Beyer*
Justin K .Beyer

57923430.1