**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ENDURANCE WARRANTY SERVICES, L.L.C., an Illinois limited liability company;** | ) ) ) | Case No. 26cv3622 |
| Plaintiff, | ) ) | **JURY DEMAND** |
| v. | ) ) | |
| **NATIONWIDE AUTOPROTECT, LLC, a New Jersey limited liability company, and ENSURETY VENTURES, LLC, a Missouri limited liability company,** | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS PROPOSED
PRELIMINARY INJUNCTION ORDER**

Pursuant to the Court's June 12, 2026, Minute Order (ECF 64), Plaintiff Endurance Warranty Services, L.L.C. submits the foregoing reply in support of its proposed preliminary injunction order.

Following the completion of expedited discovery and after evidence was submitted during the preliminary injunction on May 26, 2026, certain evidence emerged showing that Nationwide was both engaging in acts designed to impersonate Endurance as well as using third party advertisers to do the same. Both conduct is prohibited and, for both, Nationwide can be enjoined by this Court. Accordingly, through its proposed preliminary injunction order, Endurance sought to enjoin Nationwide and its third-party advertisers from engaging in their infringing behaviors.

Given an opportunity to object, Nationwide objects to only one portion of the proposed preliminary injunction order, writing:

> Nationwide objects to any requirement of the Proposed Preliminary Injunction order that would require it to "monitor" other companies not within its control who sell leads to it and companies such as Endurance itself, and/or competitors such as Car Shield, as required by Paragraphs 5 and 6 of the Proposed Order submitted by

58083546.1

>Endurance. Nationwide has no way to know from where the leads came and cannot "monitor" these lead sales companies it does not control or with whom it does not have contracts and who cold-call Nationwide, Endurance, and Car Shield, etc.

(ECF 62 at PageID #503-504.) In summary, Nationwide objects to any obligation to monitor the website, web page, or online advertisements that third party advertisers it engages post, that may infringe on Endurance's trademarks. (*Id.*; *cf.* Proposed Preliminary Injunction Order ¶ 5 (requiring Nationwide to notify third-party advertisers and lead generators to not bid on Endurance or infringe the "Endurance" mark through certain online media) & ¶6 (requiring Nationwide to cease doing business with third parties that violate the restrictions in this order and to monitor the online content of third party advertisers or lead generators it engages).)

Both the facts of this case and law establish that this language is appropriate and necessary. First, during the Preliminary Injunction hearing on May 26, 2026, portions of the Nationwide 30(b)(6) deposition were presented to the Court. During the course of that deposition, a number of salient facts were presented to the Court, including:

- Nationwide directly engages in keyword bidding and bids on and utilizes the keyword "Endurance" as part of its advertising strategy (Nationwide 30(b)(6) Dep. at 119-121);

- Nationwide utilizes third-party advertisers and lead generators (*Id.* at 24);

- Nationwide pays this advertiser for lead generation (*Id.* at 25);

- Nationwide does not have any contracts with these lead generators (*Id.*)

- Nationwide made no efforts to ensure that this third party was not infringing its competitors' trademarks (*Id.* at 25-26, 35-36, 39-40)

- The particular lead generator that generated the infringing Google ads was someone with whom Nationwide did business throughout 2023 into 2026 (*Id.* at 24, 30; *see also* Pl. Ex. 58.)

58083546.1

- Nationwide pays for Google Ad calls from third party advertisers (*Id.* at 46.)

In other words, Nationwide used the same third-party advertiser for five years and recently began using a new third-party advertiser.[1] At least one of those advertisers generated an infringing advertisement, on Nationwide's behalf, directing callers to Nationwide through a website named "nationwideprotect.com" for a defendant named Nationwide AutoProtect. (Pl.'s Ex. 58.) And myriad customers revealed and the screenshot of a Google search shows, Nationwide, through its advertiser, is holding itself out as being "Endurance," leading to consumers contacting Endurance and believing Nationwide "intercepted" their call. (*See, e.g.*, PX046 at EWSNWD_000037; PX050 at EWSNWD_000167; PX034 at EWSNWD_000381; PX035 at EWSNWD_000743; and PX035 at EWSNWD_000745.) Each of these exhibits was admitted at the preliminary injunction hearing.

Indeed, Nationwide identified two third-party lead generators with which it has done business within the last year. Nationwide identified that it specifically determines when it is purchasing leads that are being generated. (Nationwide 30(b)(6) Dep. at 25.) This is not a heavy lift for Nationwide. It knows precisely when it buys leads. It knows when it stops buying leads. This is not tasking Nationwide with monitoring some indiscriminate number of companies. It identified using two lead generators in the history of its company (it may be more, but it is a known quantity to Nationwide), and monitoring the websites being publicly presented during the finite time during which it is buying leads, is not an onerous burden for a company that has repeatedly benefited from the infringing activities of its third-party advertisers. Moreover, contrary to what Nationwide implies, the proposed injunction does not obligate it to investigate the source of any

---

[1] Nationwide identified that it recently began using a new advertiser in 2026, a fact that was not presented to the Court during the preliminary injunction hearing. (Nationwide 30(b)(6) Deposition at 38.)

3

customer inquiry. Rather, as stated, only its third-party advertisers, which it undoubtedly can identify, must be monitored.

Beyond the facts supporting the relief requested, the law—which Endurance provided to the Court and which Nationwide never rebutted at any stage in the proceedings—also justifies the relief requested. First, Endurance has a valid, protectable mark and there is a likelihood of confusion between its mark and the mark used by Nationwide. 15 U.S.C. § 1114; *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).

Under well-established law, Nationwide is liable for trademark infringement for this conduct, and this Court should enjoin Nationwide and its marketers from holding themselves out as or being affiliated with Endurance. Here, Endurance easily satisfies the second element—likelihood of confusion—as no question exists that consumers are confused by Nationwide's Google ads or websites in which they hold themselves out as "Endurance." And while actual confusion is not required, "if available, [evidence of actual confusion] is entitled to substantial weight in the likelihood of confusion analysis." *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1016 (N.D. Ill. 2014).

Moreover, this precise conduct has frequently been enjoined and held to constitute actionable trademark infringement. For example, in *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002), the Seventh Circuit upheld an injunction where the defendant embedded the plaintiff's name in its metatag.[2] Describing the conduct in which the defendant

---

[2] The Seventh Circuit explained that "[m]etatags are HTML code intended to describe the contents of the web site. There are different types of metatags, but those of principal concern … are the 'description' and 'keyword' metatags. The description metatags are intended to describe the web site; the keyword metatags, at least in theory, contain keywords relating to the contents of the web site. The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be "hit" in a search for that keyword and the higher on the list of "hits" the web page will appear." 300 F.3d at 810 fn 1 (citation omitted).

engaged as "initial interest confusion," the Seventh Circuit explained that this was both actionable under the Lanham Act, and occurred "when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Id.*, 300 F.3d at 812. Explaining the issue further, the *Promatek* Court explained, "What is important is not the duration of the confusion, it is the misappropriation of Promatek's goodwill. Equitrac cannot unring the bell." *Id.* at 812-13.

Further, courts in the Seventh Circuit have held on numerous occasions that website advertisements that "mislead[] and/or confuse[] consumers" constitute initial interest confusion. *See, e.g.*, *Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630, 637 (N.D. Ill. 2009); *see also Int'l Profit Assocs. v. Paisola*, 461 F. Supp. 2d 672, 676–77 (N.D. Ill. 2006) (analyzing plaintiff's likelihood of success on the merits after the filing of a motion for preliminary injunction based on defendant's incorporation of plaintiff's trademarks into search terms to lead users to defendant's website, the court held that plaintiff "established through affidavits and attached materials that defendants are using terms trademarked by [plaintiff] as search terms in Google's AdWords program in a manner likely to cause confusion.").

Here, as noted above, Defendant's CEO admitted in Nationwide's 30(b)(6) deposition that Nationwide engages in the exact conduct prohibited under *Paisola*. Moreover, Endurance has presented numerous caller transcripts in which the caller expressed *actual confusion* at the web ads being presented by Nationwide.

Because Nationwide is directly engaging third-party advertisers/lead generators and then taking no steps to ensure that they do not infringe on Endurance's marks, Nationwide should not be permitted to utilize the "ostrich defense." What Endurance proposes is not the scenario Nationwide argues (where Nationwide would theoretically need to monitor customer calls or

5

58083546.1

determine whether a lead generated was due to "innocent mistake"). Rather, Endurance seeks: (a) for Nationwide and its advertisers to be ordered to stop infringing on Endurance's mark, as evidenced in Plaintiff's Exhibit 58; (b) for Nationwide to cease doing business with advertisers that infringe on Endurance's mark and not accept leads from such infringing advertisers; and (c) for Nationwide to be tasked with monitoring the websites, web pages, online advertisements and other online advertising methods utilized by the third-party advertisers that *Nationwide* engages. Put simply, Nationwide cannot directly infringe, and it should not be permitted to indirectly infringe, through its third party advertisers, by simply ignoring their conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff Endurance Warranty Services, L.L.C. respectfully requests that this Court enter its proposed preliminary injunction order, as drafted and submitted by Plaintiff.

DATED: JUNE 12, 2026

Respectfully submitted,

**ENDURANCE WARRANTY SERVICES, L.L.C.**

By: */s/ Justin K. Beyer*
    One of Its Attorneys

Justin K. Beyer (justin.beyer@saul.com)
Steven M. Malitz (steven.malitz@saul.com)
Joseph M. Kuo (joseph.kuo@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
Telephone: (312) 876-7100

*Attorneys for Plaintiff Endurance Warranty Services, L.L.C.*

6

58083546.1

7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, does hereby certify that he caused a true and correct copy of the foregoing to be served on all counsel of record by way of the ECF Filing System this, the 12th day of June, 2026.

*/s/ Justin K. Beyer*
Justin K .Beyer

58083546.1